Peter W. Burg
Seth A. Katz
BURG SIMPSON ELDREDGE HERSH & JARDINE, PC
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527

*Counsel Admitted Pro Hac Vice in MDL 1699 per Judge Breyer's PTO 1*
*Attorneys for Plaintiff*

**CRB**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Master Docket No.: M:05-CV-01699-CRB |
| | MDL No.: 1699 |
| NATALIA ANASTASOPLOUS, Plaintiff, | Case No. _____ |
| v. | **CIVIL COMPLAINT FOR DAMAGES** |
| PFIZER, INC., Defendant | **JURY TRIAL DEMANDED** |

**COMES NOW** the Plaintiff, Natalia Anastasoplous, and for cause of action would respectfully show to the Court and the jury the following:

1.      This is a civil action brought on behalf of Plaintiff who suffered a stroke as a result of the ingestion of CELEBREX. Plaintiff Natalia Anastasoplous ingested CELEBREX daily from June 25, 1999 to January 26, 2005, and suffered a severe ischemic stroke on January 30, 2000.



**PARTIES**

2.      Plaintiff was an individual citizen of the State of Illinois and a resident of Oak Lawn, Illinois.

3.      Defendant Pfizer, Inc. ("Pfizer"), a Delaware corporation, authorized to do and doing business in the State of Illinois, with its principal place of business in New York, has committed a tort within the State of Illinois and may be served with process of this Court in accordance with *Federal Rules of Civil Procedure*, Rule 4(h), through its registered agent for service of process.

4.      Defendant Pfizer is liable for the acts and omissions of its predecessors in interest, Searle and Pharmacia.

5.      G.D. Searle was the discoverer and developer of CELEBREX. In 1999 Searle and Pfizer joined forces to promote CELEBREX.

6.      Thereafter, Pharmacia acquired Searle in 2000, and Pharmacia then merged with Pfizer on April 16, 2003.

7.      When Pharmacia acquired Searle, it acquired not only the rights and benefits of Searle's business and products, but also the liabilities associated with that business and those products.

8.      When Pfizer merged with Pharmacia, Pfizer acquired all of Pharmacia's liabilities.

2

## JURISDICTION AND VENUE

9.      This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, inasmuch as the parties are citizens of different states, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391.    Defendant marketed, advertised and distributed this dangerous product in this district, thereby receiving substantial financial benefit and profits from sales of the dangerous product in this district, and reside in this district under 28 U.S.C. §1391(c), such that venue is proper.

## FACTUAL ALLEGATIONS

11.     Pfizer is in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling its product celecoxib under the trade name of CELEBREX. Pfizer, at all times relevant hereto, designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold CELEBREX in the State of Illinois.

12.     Plaintiff Natalia Anastasoplous ingested CELEBREX as prescribed and, as a result thereof, suffered an ischemic stroke on January 30, 2000.

13.     At all times relevant herein, Plaintiff Natalia Anastasoplous was unaware of the serious side effects and dangerous properties of the drug as set forth herein.

14.     The product in question was designed, formulated, patented, marketed, sold, tested, warranted, and ultimately distributed by the Defendant as CELEBREX.

3

15.    CELEBREX is in a class of drugs called non-steroidal anti-inflammatory drugs ("NSAIDs") with selective cyclooxygenase 2 inhibitory properties ("COX-2 Inhibitor").

16.    In January 1999, the Food and Drug Administration ("FDA") approved CELEBREX for the treatment and management of symptoms of osteoarthritis and rheumatoid arthritis in adults.

17.    In December 1999, the FDA approved CELEBREX as an oral adjunct to usual care for patients with familial adenomatous polyposis.

18.    In November 2001, the FDA approved CELEBREX for relief of acute pain and primary dysmenorrheal (menstrual pain).

19.    In a study published in the August 29, 2000 *Proceedings of the National Academy of Sciences*, the ability of rabbits to withstand temporary experimental coronary artery occlusion (experimental heart attack) was significantly impaired by treatment with CELEBREX. The authors of the study concluded that the COX-2 enzyme, which CELEBREX suppresses, is a "cardioprotective protein."

20.    Defendant was aware of this study and its conclusions.

21.    In 2000, Defendant published the results of its Celecoxib Long-Term Arthritis Safety Study ("CLASS"). CLASS compared CELEBREX to the older NSAIDs ibuprofen and diclofenac ("VOLTAREN"). Although the celecoxib v. ibuprofen trial was 15 months in duration and the celecoxib v. diclofenac trial was 12 months in duration, Defendant only reported the data from the first six months of these trials for publication, intentionally concealing the

4

remaining data and withholding it from publication. The data it concealed demonstrated the risks associated with CELEBREX.

22.    Dr. Douglas Throckmorton, an expert with the FDA's Division of Cardio-Renal Drug Products, found that the "incidence of adverse events related to cardiac ischemia (decreased blood flow to the heart) was higher in the celecoxib group…" and concluded that "the data do not exclude a less-apparent pro-thrombotic effect of celecoxib, reflected in the relative rates of cardiac adverse events related to ischemia."

23.    Defendant was aware of Dr. Throckmorton's conclusions and the data upon which they were based.

24.    In February 2005 Defendant, for the first time, publicly acknowledged that a study it conducted in 1999 found that the number of celecoxib patients suffering heart attacks was almost four times that of those taking a placebo.

25.    This study was not published and was not submitted to the FDA until June 2001, four months after the FDA conducted a major safety review of COX-2 inhibitors, including CELEBREX.

26.    From 1999 to date, numerous clinical studies and meta-analyses have raised questions regarding the cardiovascular profile of other COX-2 inhibitors, including the drug BEXTRA, which is also manufactured by Defendant.

27.    Defendant spent more than $70 million dollars promoting CELEBREX in 2004 alone, yielding more than $3 billion dollars in sales.

5

28.     According to Defendant, its third-quarter revenues for the year 2004 grew by 4 percent over the previous year to $12.831 billion dollars. Defendant noted that third-quarter revenue was led by its pharmaceutical business, including 14% growth for CELEBREX, which exceeded sales projections. Defendant attributed the strength of CELEBREX to its "outstanding efficacy [and] long-term safety profile," specifically noting CELEBREX's purportedly stellar cardiovascular safety record.

29.     According to Defendant's 2004 annual report, its net income increased to $11.4 billion dollars.

30.     In January, 2005 the FDA issued a letter to Defendant warning against the false and misleading marketing of its products, including CELEBREX. The letter advised Defendant that its marketing schemes "omit material facts, including the indication and risk information; fail to make adequate provision for the dissemination of the FDA-approved product labeling; and make misleading safety, unsubstantiated superiority, and unsubstantiated effectiveness claims" and are "therefore in violation of the Federal Food, Drug, and Cosmetic Act and FDA implementing regulations." The FDA called for an "immediate halt" to all television, print, infomercial, and direct-mail advertising for CELEBREX.

31.     Defendant promoted the sale of CELEBREX by misleading users about the product and by failing to adequately warn users of the serious dangers that Defendant knew or should have known to be associated with the use of CELEBREX, including an increased risk of stroke events.

6

32.    Defendant failed to perform adequate pre- and post-marketing studies of CELEBREX and likewise failed to thoroughly and objectively analyze and/or report the data generated by the testing it did conduct.

33.    In promoting CELEBREX to the medical community, the FDA, and the general public, Defendant systematically mischaracterized the risks suggested by its own clinical data while emphasizing CELEBREX's purported efficacy and safety. Adequate testing and objective reporting of those tests would have demonstrated and revealed to the public and medical community the increased risk of stroke events associated with the ingestion of CELEBREX.

34.    Instead, Defendant engaged in a pattern of intentional, negligent, and reckless behavior and manipulation in a successful effort to enhance profits at the expense of the public health. Defendant's conduct demonstrates a conscious indifference to the rights and welfare of Plaintiff and the public at large.

35.    As a direct result of Defendant's misconduct, Plaintiff Natalia Anastasoplous was prescribed and ingested CELEBREX, and as a direct and proximate result she suffered a cerebrovascular infarction.

### PLAINTIFF'S USE OF CELEBREX

36.    As a result of Defendant's claim regarding the effectiveness and safety of CELEBREX, Plaintiff Natalia Anastasoplous's medical provider prescribed and Plaintiff began using CELEBREX in June of 1999.

37.    As a direct result of Plaintiff's use of CELEBREX, Plaintiff suffered serious, painful, and near-fatal adverse effects due to an ischemic stroke.

7

38.    On or about January 30, 2000, Plaintiff presented to Palos Hospital with a totally incapacitated left side.

39.    Plaintiff was diagnosed with a right cerebrovascular infarction, necessitating a highly risky endarterectomy to clean the plaque out of her right internal carotid artery that had built up as a result of her ingestion of Celebrex.

40.    Plaintiff was forced to spend more than a month and a half in the hospital, recuperating from her surgery, and an additional month after that at a rehabilitation center.

41.    Prior to her stroke, Plaintiff had been entirely self-sufficient. After her stroke, she required 24-hour care, as she was no longer able to perform basic tasks, such as dressing herself or going to the bathroom by herself. The entire left side of her body was permanently weakened.

42.    Despite the fact that Defendant knew or should have known of the serious health risks associated with the use of CELEBREX, Defendant failed to warn Plaintiff and/or her health care providers of said serious risks before she used the product.

43.    Had Plaintiff and/or her heath care providers known the risks and dangers associated with CELEBREX, she would not have used CELEBREX and would not have suffered the effects of a cerebrovascular infarction.

44.    Further, as a direct and proximate result of Plaintiff's use of CELEBREX, Plaintiff suffered significant mental anguish and emotional distress, was in fear for her life, and suffered physical limitations, pain, injury, damages, harm, and mental and emotional distress throughout the remainder of her life.

8

45.     Plaintiff also incurred medical expenses and economic harm as a direct and proximate result of her use of CELEBREX.

46.     At all times relevant herein, Defendant's actions were willful and wanton and in reckless disregard for the safety of others, including Plaintiff.

## FRAUDULENT CONCEALMENT

47.     Defendant knew that CELEBREX did not have as favorable a safety profile as other pain relief medications available on the market and that users of CELEBREX would be at increased risk for heart attacks or strokes.

48.     Defendant intentionally concealed this information from the medical community and the consuming public to preserve the profits they were earning from CELEBREX.

49.     As a result of Defendant's concealment of this material information, neither the medical community nor the consuming public knew of the risks associated with CELEBREX.

50.     Defendant's actions in concealing the true risk associated with CELEBREX until February 2005 results in an equitable tolling of the statute of limitations.

## FIRST CAUSE OF ACTION
### Strict Products Liability
### Defective Design

51.     Plaintiff adopts and realleges all paragraphs above as if fully set forth herein.

52.     Defendant is the manufacturer, designer, distributor, seller, or supplier of CELEBREX.

9

53.    CELEBREX, as designed, manufactured, sold and/or supplied by Defendant Pfizer, was placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition taking into consideration the utility of the product and the risks involved with its use.

54.    Plaintiff alleges that CELEBREX was defective in design and/or formulation in that, when it left the hands of Defendant and/or its representatives, agents or assignees, the foreseeable risks of serious harm posed by this drug far exceeded its benefits. The foreseeable risks of serious harm were such that Plaintiff, if she had known of such foreseeable risks and alleged benefits, would not have ingested CELEBREX.

55.    When placed into the stream of commerce, the drug was defective in design and formulation, making its use more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with pain management, in that it was capable of causing cardiovascular injuries, including strokes.

56.    Safer alternative designs for pain relief existed at the time that Defendant manufactured, marketed and sold Celebrex and at the time that Plaintiff Natalia Anastasoplous used Celebrex, including numerous other pain relievers that were on the market at the same time as Celebrex.

57.    Notwithstanding the foregoing, Defendant continued to aggressively market the subject product to consumers, including Plaintiff herein, without disclosing the aforesaid side effects when there were safer alternative methods of pain relief available.

58. Had Plaintiff and/or her heath care providers known the risks and dangers associated with CELEBREX, she would not have used CELEBREX and would not have suffered the effects of a cerebrovascular infarction.

59. As a direct and proximate result of Pfizer's conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, Plaintiff suffered severe and permanent physical injuries. Plaintiff endured substantial pain and suffering. She incurred significant expenses for medical care and treatment. Plaintiff suffered economic loss, and was otherwise physically, emotionally and economically injured. Plaintiff's injuries and damages were permanent and continued throughout the remainder of her life.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Defect Due to Inadequate Warnings

60. Plaintiff adopts and realleges all paragraphs above as if fully set forth herein.

61. CELEBREX, as designed, manufactured, distributed, sold and/or supplied by Defendant, was defective in marketing due to inadequate warnings, instructions and/or labeling because Defendant knew or should have known that the product created significant risks of serious bodily harm and death to consumers and it failed to adequately warn consumers and/or their health care providers of such risks.

62. CELEBREX was also defective due to inadequate warnings and misrepresentations to healthcare professionals. Defendant knew that had healthcare professionals been adequately warned of the serious risks of injury to their patients, healthcare professionals would not have prescribed CELEBREX to their patients.

11

63. Had Plaintiff and/or her healthcare providers known the risks and dangers associated with CELEBREX, she would not have used CELEBREX and would not have suffered the effects of a cerebrovascular infarction.

64. As a direct and proximate result of Pfizer's conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, Plaintiff suffered severe and permanent physical injuries. Plaintiff endured substantial pain and suffering. She incurred significant expenses for medical care and treatment. Plaintiff suffered economic loss, and was otherwise physically, emotionally and economically injured. Plaintiff's injuries and damages were permanent and continued throughout the remainder of her life.

## THIRD CAUSE OF ACTION

### Strict Products Liability
### Defect Due to Failure to Conduct Adequate Testing

65. Plaintiff adopts and realleges all foregoing paragraphs as if fully set forth herein.

66. CELEBREX, as designed, manufactured, distributed, sold and/or supplied by Defendant, was defective due to inadequate testing.

67. CELEBREX was also defective due to inadequate testing both before and after Defendant became aware of the risks of ingesting the drug.

68. As the producing and direct cause and legal result of the design defect and/or the marketing defect due to the Defendant's failure to warn consumers, as well as the defective condition of the drug manufactured and supplied by Defendant and its representatives, Plaintiff Natalia Anastasoplous suffered injuries and monetary damages.

12

69.    Had Plaintiff and/or her healthcare providers known the risks and dangers associated with CELEBREX, she would not have used CELEBREX and would not have suffered the effects of a cerebrovascular infarction.

## FOURTH CAUSE OF ACTION

### Fraud

70.    Plaintiff adopts and realleges all foregoing paragraphs as if fully set forth herein, and further alleges:

71.    Plaintiff adopts and realleges all foregoing paragraphs as if fully set forth herein, and further alleges:

72.    Defendant Pfizer fraudulently represented to the general public, as well as to healthcare professionals, that CELEBREX was a safe and effective drug. Defendant Pfizer made the representation while knowing that, if healthcare professionals knew the truth about the serious nature of the risks associated with the ingestion of CELEBREX, they would not prescribe this drug.

73.    Defendant knew its representations to be false, and Plaintiff Natalia Anastasoplous relied on Defendant's false representations in her ingestion of CELEBREX. These fraudulent representations by Defendant were a proximate cause of the injuries to and monetary losses of Plaintiff Natalia Anastasoplous.

74.    Had Plaintiff and/or her healthcare providers known the risks and dangers associated with CELEBREX, she would not have used CELEBREX and would not have suffered the effects of a cerebrovascular infarction.

13

## FIFTH CAUSE OF ACTION

### Negligence

75.    Plaintiff adopts and realleges all foregoing paragraphs of as if fully set forth herein, and further alleges:

76.    Defendant Pfizer and its representatives were merchants or sellers of CELEBREX. Defendant Pfizer had a duty to exercise reasonable care in the design, manufacturing, marketing, sale, testing and/or distribution of this drug into the stream of commerce.

77.    Defendant Pfizer failed to exercise ordinary care in the design, manufacturing, marketing, sale, testing, and/or distribution of CELEBREX into interstate commerce. Defendant knew or should have known that CELEBREX greatly increased Plaintiff's risks of having a heart attack and/or stroke, or worse, of causing her death.

78.    Despite the fact that Defendant knew or should have known that CELEBREX could cause unreasonably injurious results and/or death to Plaintiff, Defendant continued to market, distribute, and sell CELEBREX to the public.

79.    Defendant Pfizer knew or should have known that consumers, such as Plaintiff, would foreseeably suffer injuries and/or death as a result of Defendant Pfizer's failure to exercise ordinary care as described above. Moreover, after Defendant became aware of the serious risks of ingesting CELEBREX, it owed a legal duty to the public in general, and to Plaintiff in particular, to disclose this knowledge.

14

80.    Defendant Pfizer's breach of its duty to disclose this information was a proximate cause of the Plaintiff's injuries and monetary damages.

### SIXTH CAUSE OF ACTION

#### Negligent Misrepresentations

81.    Plaintiff adopts and realleges all foregoing paragraphs as if fully set forth herein, and further alleges:

82.    Defendant Pfizer represented and marketed CELEBREX as being safe and effective. After Defendant became aware of the risk of ingesting CELEBREX, however, Defendant failed to communicate to Plaintiff and/or the public at large, that the ingestion of this drug could cause a person to suffer a heart attack or stroke, or that CELEBREX could cause death.

83.    Therefore, Plaintiff brings this cause of action against Defendant Pfizer under the theory of negligent misrepresentation for the following reasons:

      a.  Defendant failed to warn Plaintiff, and other consumers, of the defective condition of CELEBREX as manufactured and/or supplied by Defendant; and

      b.  Defendant Pfizer, individually, and through its agents, representatives, distributors, and/or employees, negligently misrepresented material facts about CELEBREX in that they made misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendant Pfizer made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations; and

15

c.  The above misrepresentations were made to the Plaintiff as well as to the public in general; and

d.  Plaintiff Natalia Anastasoplous and her healthcare provider justifiably relied on Defendant's misrepresentations to their detriment; and

e.  Consequently, Plaintiff Natalia Anastasoplous ingestion of CELEBREX proximately caused her injuries and monetary losses.

## SEVENTH CAUSE OF ACTION

### Expressed Warranty for Goods

84.    Plaintiff adopts and realleges all foregoing paragraphs as if fully set forth herein, and further alleges:

85.    Defendant Pfizer breached its express warranty of goods. Defendant was a merchant and/or seller of CELEBREX, and sold this drug to consumers for the ordinary purpose for which the drug is used. Defendant owed a legal duty to Plaintiff, and to the public in general, to disclose its knowledge of the serious risks of ingesting CELEBREX as marketed.

86.    This breach of duty was a proximate cause of the injuries and monetary loss of Plaintiff.

## EIGHTH CAUSE OF ACTION

### Implied Warranty of Merchantibility

87.    Plaintiff adopts and realleges all foregoing paragraphs as if fully set forth herein, and further alleges:

88.    Defendant Pfizer breached its implied warranty of merchantibility. Defendant was a merchant and/or seller of CELEBREX, and sold this drug to Plaintiff and other consumers for the ordinary purpose for which the drug is used.

89.    CELEBREX was defective, unmerchantable, and unfit for the ordinary purposes for which such drugs are used, and as such, was a proximate cause of Plaintiff's injuries and monetary losses.

## NINTH CAUSE OF ACTION

### Implied Warranty of Fitness for a Particular Purpose

90.    Plaintiff adopts and realleges all foregoing paragraphs as if fully set forth herein and further alleges:

91.    Defendant Pfizer breached its implied warranty of fitness. Defendant sold CELEBREX, and, at the time of the sale of this drug, Defendant knew or had a reason to know of a particular purpose for which this drug was to be used, namely, in the treatment of osteoarthritis and rheumatoid arthritis.

92.    At the time of the sale of the drug to Plaintiff, Defendant knew or had reason to know that Plaintiff was relying on the skill and judgment of Defendant Pfizer to furnish a suitable product for the intended purpose. At the time of the sale of the drug to Plaintiff,

17

Defendant Pfizer exercised its skill and judgment in the selection of this drug as safe and effective, and Plaintiff relied thereon.

93.    CELEBREX was not reasonably fit and/or suitable for the use for which it was selected. Defendant's failure to select and sell a product which was reasonably safe for its intended purpose proximately caused Plaintiff's injuries and monetary losses.

## TENTH CAUSE OF ACTION

### Unlawful and Deceptive Business Practices in Violation of 815 ILCS 505

94.    Defendant Pfizer is the manufacturer of CELEBREX and is in the business of designing, manufacturing, marketing, developing testing, labeling, promoting, distributing, warranting, and selling its product CELEBREX to consumers, including Plaintiff herein.

95.    At all times relevant herein, Plaintiff Natalia Anastasoplous was unaware of the serious side effects and dangerous properties of the drug as set forth herein.

96.    At the time of the sale of the drug to Plaintiff, Defendant knew or had reason to know that Plaintiff was relying on the skill and judgment of Defendant Pfizer to furnish a suitable product for the intended purpose.

97.    At the time of the sale of the drug to Plaintiff, Defendant Pfizer exercised its skill and judgment in the selection of this drug as safe and effective, and Plaintiff relied thereon.

98.    Defendant was aware of the substantial risks of taking CELEBREX but failed to fully disclose these risks to the market, including Plaintiff and her health care providers, and had been aware of those risks at least since before Plaintiff suffered her injuries and losses.

18

99.    Defendant knowingly made false representations as to the safety characteristics and risks associated with its drug CELEBREX.

100.    As a direct and proximate result of Pfizer's conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, Plaintiff suffered severe and permanent physical injuries. Plaintiff endured substantial pain and suffering. She incurred significant expenses for medical care and treatment. Plaintiff suffered economic loss, and was otherwise physically, emotionally and economically injured. Plaintiff's injuries and damages were permanent and continued throughout her life.

## ELEVENTH CAUSE OF ACTION
### Fraudulent Concealment

101.    The running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her prescribing physician the true risks associated with taking CELEBREX.

102.    As a result of Defendant's actions, Plaintiff and her prescribing physician were unaware, and could not reasonably know or have learned through reasonable diligence that they had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendant's actions, until such time as the true risks associated with CELEBREX were disclosed to the public.

## PUNITIVE DAMAGES

103.    At all times relevant hereto, Defendant Pfizer actually knew of the defective nature of CELEBREX as set forth herein, and yet continued to design, manufacture, market,

19

distribute, and sell CELEBREX so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable harm caused by CELEBREX. Defendant Pfizer's conduct exhibits such a lack of care as to establish that its actions were the result of fraud, ill will, recklessness, and/or willful and intentional disregard for the safety and rights of Plaintiff as well as the general public. Plaintiff is therefore entitled to punitive damages for such conduct.

## JURY DEMAND

104.    Plaintiff hereby demands a trial by jury on all issues in this case.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that upon trial hereof, the Court grant her the following:

    a.  Judgment against Defendant Pfizer for actual damages, as set forth above, in an amount in excess of the minimum jurisdictional limits of this Honorable Court; and

    b.  Interest on said Judgment, at the legal rate from the date of the Judgment; and

    c.  Plaintiff's costs of this suit; and

    d.  Damages for pain and anguish, as set forth above, in an amount to be determined upon proof at trial; and

    e.  Medical expenses; and

    f.  Prejudgment interest as allowed by law; and

    g.  Punitive damages in an amount to be determined upon proof at trial; and

    h.  Any additional and further relief as this Court deems just and proper.

Respectfully submitted,

**BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.**

Peter W. Burg
Seth A. Katz
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Fax: (303) 708-0527

*Attorneys for Plaintiff Natalia Anastasoplous
Counsel Admitted Pro Hac Vice in MDL
1699 per Judge Breyer's PTO 1*